

NEW JERSEY OFFICE
06 POMPTON AVENUE, SUITE 25
CEDAR GROVE, NJ 07009
(973) 239-4300

NEW YORK OFFICE
347 5TH AVENUE, SUITE 1402
NEW YORK, NY 10016
(646) 205-2259

LORRAINE@LGRLAWGROUP.COM
WWW.LGAULIRUFO.COM
FAX: (973) 239-4310

March 8, 2022

*Via ECF*
Hon. Richard M. Berman
United States Courthouse
500 Pearl Street
New York, NY 10007-1312
District of New Jersey

        Re: *United States v. Robert Balducci*
           21-CR-00355 (RMB)

Dear Judge Berman:

      Please accept this submission on behalf of Robert Balducci in mitigation of his sentencing. In addition to this sentencing submission, enclosed are several letters from family and friends attesting to Mr. Balducci's good character (Exhibit A), and photographs of he and his family (Exhibit B). These exhibits, together with the facts are arguments set forth herein, support a downward variance from Mr. Balducci's advisory United States Sentencing Guidelines ("USSG" or "Guidelines") range to a non-custodial sentence, which is a sentence that is sufficient but not more than necessary to satisfy the goals of sentencing.

      Mr. Balducci was initially charged by way of Indictment, and immediately accepted responsibility for his conduct and met with the government in an attempt to cooperate, although the Government did not deem the cooperation to be useful. Mr. Balducci is extremely remorseful

for committing this offense, and notes that it is the only blemish on his otherwise pristine background. This offense was committed during a very dark period in his life, where he was overtaken by mental health issues, that in their untreated state, culminated in a suicide attempt on his life. He has since received therapy that has helped him tremendously. He has taken full responsibility for his involvement in this offense, pled guilty and will accept the sentence Your Honor imposes. However, there are many factors that Mr. Balducci respectfully requests that Your Honor consider pursuant to 18 USC § 3553(a) when fashioning an appropriate sentence, including his background, family, particularly his young son, and his post offense rehabilitative conduct, all of which when taken together support the imposition of a sentence that is below Mr. Balducci's advisory Guideline range and one that is non-custodial.

## I.     History and Characteristics of Mr. Balducci

Although Mr. Balducci left high school in 9th or 10th grade, he subsequently was able to obtain his GED and obtain several college credits, nearly achieving an Associate's degree before stopping school to take a fulltime job at Rikers Island with the NYC Department of Corrections ("DOC") as a corrections officer. Moreover, while not in school, Mr. Balducci has always been gainfully employed, beginning when he was 16 years old and working for U-Haul, then at 18 years old working in maintenance at St. Joseph's School for the Deaf, and after that continuing to his employment with the DOC. PSR,¶¶ 69-71. Even after his termination from the DOC Mr. Balducci quickly found employment with Stanley Steamer, where he is employed today and where he started work five days after his arrest. PSR, ¶ 68.

Mr. Balducci has had serious bouts of depression, anxiety and post-traumatic stress that began so after he started working at Rikers Island. He noted that every day as he drove over the Rikers Island bridge on his way to work, he would experience a horrific feeling of "dread"

followed by severe anxiety. Mr. Balducci remarked that it could have been due to what he witnessed at the jail, including assaults on guards, many other forms of violence and throwing of urine and feces by the inmates. PSR, ¶ 55. During this time frame, Mr. Balducci was dealing with untreated mental illnesses, which illnesses were diagnosed after he was terminated from employment and on Pretrial Release in the current case and receiving mental health treatment for the first time in his life. PSR, ¶56. In July 2021, as a condition of his Pretrial Release, Mr. Balducci was to undergo mental health treatment, which he has attended weekly since that time. During this time, Mr. Balducci has seen a remarkable improvement in mental health and emotional being. As noted in the PSR, during his darkest hours while working at Rikers, he did attempt suicide. PSR, ¶56. While he does not feel depressed or suicidal today, he was desperate and scared and riddled with anxiety while working at Rikers.[1]

Mr. Balducci has supportive parents, particularly his father and his stepmother whom he resides with in Putnam County, NY. He is also involved in a serious relationship with Amanda Serrano who is extremely supportive of Mr. Balducci. They have been together for four years and intend to reside together following Mr. Balducci's resolution of this matter. Mr. Balducci's pride and joy, however, is his ten-year-old son. *See* photos attached hereto as Exhibit B.[2] Mr. Balducci shares joint custody with the boy's mother. Mr. Balducci and his son have a tremendous bond, and the fact that he may have to be away from his son causes Mr. Balducci much sadness. His son has a genetic disorder called Tyrosinemia, which is a genetic disorder caused by disruptions in the breakdown of proteins. PSR, ¶ 48. His son must monitor his intake of protein, or he could get

---

[1] Although the PSR makes a presumption that Mr. Balducci committed the current crime for the money, his decision was also based in part on his anxiety and depression. He was not in his right frame of mind when engaging in these activities and was suffering from both of these emotional illnesses as well as post-traumatic stress disorder. *Id.*
[2] The photos of Mr. Balducci's son (a minor) will not be filed on ECF but will be provided to the Court and Government *via* email.

seriously ill. *Id.* Mr. Balducci's friends and family members all note his devotion to his son, and what an involved and supportive father he is. *See* Exhibit A, letters attached hereto.

Because of an injury that occurred last summer, Mr. Balducci had to undergo surgery on his arm; an injury that kept him out of work from that time until November. PSR, ¶ 53. However, other than being overweight (he currently weighs 350 pounds), Mr. Balducci's physical condition is good. This offense marks his first offense ever. He has been on pretrial release for nearly one year and has complied in every respect.

Mr. Balducci has submitted many letters from family and friends attesting to his good character. His father, who got emotional speaking with probation, has indicated that he is very close to his son, totally supports him, and saw the mental toll his son experienced while working at Rikers. Exhibit A, p.1. While his stepmother says the same thing, she also notes that he is like a big teddy bear, kind and helpful to all especially to her and her father. Exhibit A., p.2. In fact, all the letters submitted in support of Mr. Balducci articulate what a kindhearted person he is, and indicate this behavior was clearly an aberration of character. See Exhibit A.

## II.     The Law - Sentencing Factors

While the Guidelines range is one factor the sentencing court must consider, this factor must be considered together with all the other factors of this section. "[T]he Sentencing Guidelines are just that, guidelines, and … 'they truly are advisory'" *Douglas*, 713 F.3d at 700 (quoting *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*). This Court "may not presume that the Guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented" *Gall v. United States*, 552 U.S. 38, 50 (2007).

In determining the sentence to impose, the sentencing court should take as its "lodestar

the parsimony clause of 18 U.S.C. § 3553(a)" *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with' the purposes of sentencing, which are those set forth in 18 U.S.C. § 3553(a)(2)," namely, "proportionality, deterrence, incapacitation, and rehabilitation." *Id*. See also, e.g*., United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006). "[D]istrict courts may impose sentences … based on appropriate consideration of all the factors listed in § 3553(a)." *Pepper v. United States,* 131 S. Ct. 1229, 1241 (2011). Those factors are, in part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant.
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;…
> (5) any pertinent policy statement;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.
> 18 USC § 3553(a).

In this matter, the facts set forth above show that a sentence of 60 months is sufficient, but not greater than necessary to satisfy the purposes of sentencing.

### III. Application of Facts to the law

While the nature of this offense was serious, the Court must also consider the history and characteristics of the defendant, as well as other factors in fashioning a sentence that is sufficient,

but not more than necessary to satisfy the goals of sentencing. Mr. Balducci was extremely depressed and dealing with other undiagnosed mental illnesses at the time he committed this offense. His work at Rikers had caused him such anxiety and post-traumatic stress, that he dreaded going to work every day. He acknowledged that he was frightened and traumatized each day at work. All those who know Mr. Balducci suggest that the conduct involved in the offense was extremely out of character for him. He is now being treated for the first time and can clearly see the difference in his life; his outlook is positive, and he can see and acknowledge the poor and horrible choices he made while working at Rikers. He intends to remain in therapy for as long as possible. He wants to be the best father he can be to his son, and the best son he can be to his parents. He wants to live positively today and stay away from that black hole and desperation that drove him to the point of considering taking his own life. He lives today for this son and for the hope he can give back to his parents. Today Mr. Balducci is hopeful and positive, and looking forward to living a productive, law-abiding life from here on out.

As for the need for the sentence to promote respect for the law and deter criminal conduct, as noted above, this marks Mr. Balducci's first run in with the law, and his conduct was engaged in while he was in a deep depression, anxiety ridden, and dealing with post-traumatic stress all of which caused him to be suicidal. He has enthusiastically engaged in therapy for nearly a year, and with the help of professionals is dealing and recovering from his mental and emotions illness and looking forward to a fulfilling life with his paramour, son and parents.

His advisory Guideline range starts with a sentence of 18 months. Mr. Balducci is requesting that Your Honor consider all the above factors set forth above in mitigation prior to fashioning an appropriate sentence. Mr. Balducci also asks Your Honor to consider in mitigation that he was a corrections officer, and that fact could subject Mr. Balducci to great harm in prison

were the inmates to find out and/or recognize him as such. There is a great danger posed by sending him to prison. Justice could be served by imposing a lengthy term of probation in conjunction with house arrest, or any other conditions Your Honor deems appropriate. Such a noncustodial sentence would be a just sentence considering all of the factors raised in mitigation and those set forth in 18 USC § 3553(a), and a sentence that is sufficient but not more than necessary to comport with the goals of sentencing.

### IV.  Conclusion

For the foregoing reasons, Mr. Balducci respectfully requests that this Court sentence him to non-custodial sentence, which is a sentence that is sufficient but not more than necessary to comport with the goals of sentencing. Your Honor's consideration of this submission in support of Mr. Balducci's sentencing is greatly appreciated.

Respectfully submitted,
s/
Lorraine Gauli-Rufo
Attorney for Robert Balducci

Enclosures

cc: All Counsel of Record