

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 15, 2022

**By ECF**

Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *United States v. Robert Balducci*, 21 Cr. 355 (RMB)

Dear Judge Berman:

  The Government respectfully submits this letter in advance of sentencing in the above-captioned case, which is currently scheduled for March 21, 2022. For the reasons set forth below, the Government submits that a sentence within the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 18 to 24 months' imprisonment is appropriate in this case.

  **A. Offense Conduct**

  The charges in this case arose out of an investigation conducted by the Federal Bureau of Investigation ("FBI") and the New York City Department of Investigation ("DOI"). The three-count Indictment ("Indictment") charged that, in or about October 2020, the defendant conspired to commit bribery and honest services wire fraud, in violation of Title 18, United States Code, Section 371 ("Count One"); bribery, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2 ("Count Two"); and honest services wire fraud, in violation of Title 18, United States Code, Sections 1343, 1346, and 2 ("Count Three"). (*See* Final Presentence Investigation Report dated January 14, 2022 (the "PSR"), filed by the U.S. Probation Office ("Probation") ¶¶ 1–4.)

  Since in or about October 2020, the FBI and DOI have been conducting an investigation into contraband smuggling by certain inmates and employees at the Otis Bantum Correctional Center ("OBCC"), which is part of the New York City Department of Correction ("NYCDOC") prison complex on Rikers Island, in return for cash bribes. (PSR ¶ 10.) During the period charged in the Indictment, the defendant was a NYCDOC correction officer working at the OBCC. (*Id.* ¶ 11.) As such, his primary duty was to ensure the care, custody, and control of the inmate population, including by complying with all rules and regulations in force at Rikers. (*Id.*)

  The defendant disregarded that duty. Instead of enforcing the rules and regulations at the OBCC, the defendant met the girlfriend ("CC-1") of particular inmate ("Inmate-1"), as well as the

girlfriend ("CC-2") of another inmate ("Inmate-2"), in the Bronx in order to obtain contraband, which he then smuggled into the very jail he was supposed to be guarding. (PSR ¶ 11.) While all contraband ferried into correction facilities carries some risk, the contraband the defendant smuggled into the OBCC was particularly dangerous. Evidence obtained during the course of this investigation showed that a search of Inmate-2's cell later revealed, among other things, eighteen ceramic scalpels approximately 1.25 inches in length:



(*Id.* ¶ 12.) The defendant subsequently was stopped while attempting to smuggle additional contraband into the OBCC on October 24, 2021. (PSR ¶ 14.) On his person, law enforcement found, among other things, marijuana and five small metal razor blades:



(*Id.* ¶¶ 14–17.)

Ultimately, the defendant was arrested on May 26, 2021. (PSR ¶ 21.) On October 26, 2021, he pled guilty to Counts One and Two of the Indictment pursuant to a plea agreement (the "Plea Agreement") that, among other things, stipulates that the defendant agrees to forfeit $2,800 and to make restitution in the amount of $10,028.71 to the NYCDOC. (*Id.* ¶¶ 5–6.)

Hon. Richard M. Berman  Page 3
March 15, 2022

### B. Applicable Guidelines Range

Pursuant to the Plea Agreement, the parties agree that the Guidelines calculation applicable to the defendant results in a combined Adjusted Offense Level of 15, and that the defendant is in Criminal History Category I.  (*See* PSR ¶ 6.)  As such, the agreed Guidelines range is 18 to 24 months' imprisonment (the "Stipulated Guidelines Range").  Probation agrees with that calculation (*id.* ¶ 78), and recommends a sentence of 18 months.  (*Id.* at 26.)

### C. Discussion

#### 1. Applicable Law

As the Court is aware, the Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and that range "should be the starting point and the initial benchmark" for the Court's sentencing determination.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *id.* at 46, they are not merely a "body of casual advice."  *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

Following the calculation of the applicable Guidelines range, a court then considers the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law.  *Gall*, 552 U.S. at 50 & n.6.  In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives."  *Rita v. United States*, 551 U.S. 338, 348 (2007).  To the extent a court imposes a sentence outside the range recommended by the Guidelines, that court must "consider the extent of the deviation and

Hon. Richard M. Berman  Page 4
March 15, 2022

ensure that the justification is sufficiently compelling to support the degree of the variance." *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

### 2. A Sentence Within the Stipulated Guidelines Range Is Appropriate

The Government submits that a sentence within the Stipulated Guidelines Range of 18 to 24 months' imprisonment appropriately reflects the serious nature of the defendant's conduct, promotes respect for the law, and affords adequate deterrence to similar illegal activity.

*First*, a sentence within the Stipulated Guidelines Range would appropriately reflect the gravity of the defendant's offense and promote respect for the law. As a correction officer, the defendant was duty-bound to protect the inmates and employees on Rikers Island, including by preventing access to drugs and other dangerous contraband. Instead, the defendant ignored that duty – not merely by ignoring contraband flowing into the jail, but also by conspiring with others to *introduce* prohibited substances into the OBCC and enrich himself at the expense of order and safety within the facility.

Worse, the defendant's actions provided inmates with extremely dangerous prohibited items. It should be readily apparent that razor blades and ceramic scalpels (which would not trigger metal detectors) pose grave and direct threats to the lives of the inmates, officers, and staff at Rikers. Moreover, the presence of potentially deadly weapons within the facility – which the defendant introduced on multiple occasions – contributes to the culture of violence and danger that has plagued the institution. Nevertheless, the defendant willfully disregarded the law, his duty as a correction officer, and the safety of others in exchange for several thousand dollars. A sentence within the Stipulated Guidelines Range would reflect the seriousness of that conduct, and promote respect for the law.

*Second*, a sentence within the applicable Guidelines range is necessary to afford adequate deterrence. As detailed above, the defendant's involvement in this smuggling scheme was not confined to a single incident. And the defendant is not the first correction officer to violate his duty and conspire with inmates.[1] Sadly, it also is unlikely that the defendant will be the last correction officer willing to place greed before his obligations to the law and to the public. Because the defendant's conduct is so dangerous, and because it can be so difficult to detect, it is necessary to deter others by sending a strong message that stark consequences follow from such offenses.[2]

In his submission, the defendant argues that he "was extremely depressed and dealing with other undiagnosed mental illnesses at the time he committed this offense," and that "[h]is work at

---

[1] Indeed, on the day he was arrested, eight other NYCDOC employees were charged in separate indictments for participating in various contraband smuggling schemes. *See United States v. Assanah*, 21 Cr. 351 (CM); *United States v. Garrett*, 21 Cr. 354 (VEC); *United States v. Compres*, 21 Cr. 352 (PAE); *United States v. Harrell*, 21 Cr. 353 (RA); *United States v. Diaz*, 21 Cr. 350 (NRB); *United States v. Lewis*, 21 Cr. 349 (JSR); *United States v. Pelzer*, 21 Cr. 348 (JMF); *United States v. Reed*, 21 Cr. 347 (RA).

[2] As of the date of this filing, three defendants in the above-referenced cases involving NYCDOC employees have pled guilty and been sentenced. While those defendants each received sentences

Hon. Richard M. Berman  Page 5
March 15, 2022

Rikers had caused him such anxiety and post-traumatic stress, that he dreaded going to work every day." (Dkt. 35 at 6.) The defendant further urges that "[h]e is now being treated for the first time and can clearly see the difference in his life; his outlook is positive, and he can see and acknowledge the poor and horrible choices he made while working at Rikers." (*Id.*) While those changes are welcome, they do not absolve the defendant of responsibility for placing the lives of others at serious risk, or for perpetrating and exacerbating the very environment he decries.[3]



### D. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 18 to 24 months' imprisonment would adequately balance the relevant considerations under Section 3553(a), and achieve the statute's stated objectives in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____
Jarrod L. Schaeffer
Assistant United States Attorney
Tel.: (212) 637-2270

cc: Counsel of Record (via ECF)

---

of probation or time served, none of the sentenced defendants was charged – as is this defendant – with smuggling razor blades or scalpels into a jail facility.

[3] Likewise, the defendant's attempt to commit suicide in 2020 (*see* Dkt. 35 at 3), though tragic and fortunately unsuccessful, does not explain or excuse his decision to place others at risk in exchange for pecuniary gain.